## CLAGGETT, PET'R *v.* SIMES.

A judgment, entered by the clerk, in pursuance of an express order of the court, will not be void, a mere nullity, though the court, by a subsequent order not noticed by the clerk, have directed the case to be continued.

Such a judgment would be irregular and voidable, and liable to be set aside, upon seasonable application to the court.

The right to make such application would be waived by a delay of a year after the facts were known to the party injured.

If a party has admitted, in a lease under seal, the existence of a judgment, and writ of possession of mortgaged premises, when aware that the case had been ordered to be continued, it would be strong evidence of the validity of both.

It is not necessary that a decision of the court of common pleas, and an exception taken by a party, should be expressly stated in drawing a case; they may be necessarily implied from what is stated.

A judgment may be ordered in the court of common pleas, or the decision of the superior court certified to that court; in either case the decision is final.

If a court has jurisdiction of the subject matter, a judgment rendered by them, however irregular or erroneous, will not be void, but merely voidable, upon a proper application.

This is a petition to the court of common pleas, to strike out the entry of a judgment alleged to be made by a former clerk, in vacation. At the September term, 1852, a case was made and transferred to the superior court, and there decided, of which decision a full report will be found in 5 Foster's Rep. 402. An order of the superior court, as of December, 1852, was certified to the court of common pleas, as follows:

" Superior Court of Judicature, Rockingham, ss.
" December Term, 1852.
" Claggett, pet'r *v.* Simes.
" In this case, it is adjudged by the court that the petition be dismissed.
" J. J. GILCHRIST.
" To the clerk of the superior court for the county of Rockingham.

Claggett *v*. Simes.

" Superior Court of Judicature, December Term, 1852.

" To the clerk of the court of common pleas for the county of Rockingham : I hereby certify that the foregoing is a true copy of the original.

" Attest—IRA B. HOITT, Clerk S. C. J."

At the February term, 1853, of the court of common pleas, the petition was dismissed, in consequence of said order, and in compliance with it, without any examination of the merits of the case.

At the February term, 1854, the petition was restored to the docket. And at the September term, 1854, the counsel for Simes moved that the order of the superior court be enforced. The counsel for Claggett objected that the order exceeded the jurisdiction of the superior court to make, upon the case that was transferred. But the court decided that the order was binding upon the court, and so the petition must be dismissed, and the counsel for said Claggett excepted to said decision. The parties were allowed to refer to a previous case, transferred February term, 1851.

The facts which appeared upon the hearing in this case, are concisely but distinctly stated in the report referred to in 5 Foster's Reports.

BELL, J. Though the question raised by the present case relates merely to the jurisdiction of this court to make the orders directed by them upon the cases before transferred, yet, considering that the decision made in the first of those cases has not been reported, it has been thought advisable to state the views of the court upon several questions to which the entry of judgment in the case of *Simes* v. *Claggett*, at the February term, 1849, has given rise.

The general and well settled rule of law is, that when the proceedings of any court are collaterally drawn in question, and it appears upon the face of them that the subject matter of them was within the jurisdiction of the court, they

are voidable only. The errors and irregularities, if any exist in them, are to be corrected by some direct proceeding, either before the same court, to set them aside, or in an appellate court. *Kittridge* v. *Emerson*, 5 N. H. Rep. 262; *Morse* v. *Presby*, 5 Foster's Rep. 303; *Nichols* v. *Smith*, 6 Foster's Rep. 300; and not, as is contended by the petitioner, a mere nullity, and absolutely void. Considered, then, as a judgment of the court of common pleas, as it purports to be, the defects alleged against the judgment in question here, render it not void, but voidable; for it appears on the face of the proceedings that the court had jurisdiction of the subject matter of the suit, as well as of the parties, and the process used, and no question has been or can be made of their rightful authority to render a judgment in that case. From the very nature of this proceeding, designed to set aside this judgment, the petitioner impliedly admits that it purports to be a judgment of that court, and is to be regarded as a valid judgment, until it is set aside.

Whether, then, the judgment which is the subject of complaint in this case, has been entered by the clerk without the order or authority of the court, and if so, whether it was done by mistake or design, whether the judgment is absolutely void, or is incorrect and irregular, in whole or in part, the jurisdiction of the court of common pleas to set it aside, or to amend and correct it in any particular in which it is wrong, is unquestioned, and admits of no doubt.

The regular course of proceeding to set aside a judgment, or to amend it, is a motion to the court in which the judgment is rendered, and the original motion of Mr. Claggett was, therefore, the proper mode of proceeding, and upon a proper case being presented to the court, he might have been relieved, upon that motion. The petition presented to the court for this same purpose, is not a usual proceeding in courts of common law, though common in courts of equity. It may, however, be regarded as an awkward mode of making the required motion to set aside the judgment, and no seri-

Claggett *v.* Simes.

ous objection need be made to the application, on account of its form in this respect. The difference of form being disregarded, this application is substantially the same as the motion of the February term, 1851.

By our practice, when it is desired to make a motion of any kind, in a case which has been supposed to be finally disposed of, and has, therefore, been omitted upon the minute book or docket of the court, it is required that a motion be made to restore the action to its place upon the docket, or bring it forward, as it is called, that the docket of the term may show the orders and proceedings in the case. A proper application for this purpose accompanies both the motion and the petition, and no objection is made on this account.

The case, then, being regularly brought before the court of common pleas, it is objected that the question presented to that court was one merely of a discretionary character, upon which they were bound to exercise their own judgment, and which they could not transfer to the superior court, or any other tribunal; and that consequently the past action of the superior court is both unauthorized and inoperative. It has been not unusual for the courts of common pleas, where questions of judicial discretion were attended with doubt and uncertainty, to state a case presenting the facts, as they appear before them, and to transfer the same to the superior court for their opinion; and this court have usually examined such cases, and certified their opinion to the court below for their guidance. This has not been done as a matter of course, nor as a matter of right of any party, but in cases where, from the statement, it was apparent that the court below have made their rulings subject to the opinion of the superior court. But the power of this court to consider, or to decide such questions, is denied, as well as the right of the court of common pleas to transfer them in any case. The Revised Statutes, (ch. 172, §§ 7, 8 and 9,) confer all the powers possessed by the superior court to take

Claggett *v.* Simes.

cognizance of cases transferred to them from the court of common pleas.

" Any person aggrieved by any opinion, direction or judgment of said court of common pleas, in any action or proceeding, may allege exceptions thereto, at the same term, which shall be reduced to writing before the adjournment of the court without day, and being conformable to the truth of the case, shall be signed by the presiding justice, and shall be a part of the record in such case.

" The questions arising upon such exceptions, or upon a special verdict, and any issue of law, motion for a new trial, or statement of facts, agreed and signed by the parties in any case, may be reserved and assigned by the presiding justice, if he think fit, to the determination of the superior court; and such justice shall direct such documents and papers as he thinks necessary, to be transmitted to said court.

." The decision of the superior court in any of the cases aforesaid, shall be certified by the clerk thereof to the clerk of the court of common pleas, in which the action is pending, and such judgment shall be entered, or disposition made as is directed therein."

The objection made is, that in neither of the first transfers made in this case, is it expressly stated that the court of common pleas expressed any opinion, gave any direction, or rendered any judgment, or that any exceptions were taken by any person aggrieved, and they, therefore, do not expressly appear to have been made in any of the cases specified in the statute. But we are of opinion that it is not necessary that these facts should be expressly stated. They may sufficiently appear by implication. And where the case shows that a motion or application was made to the court for some order or disposition of a case, and the question is transferred, it is necessarily implied that the court declined to make the order, and the mover excepted. Upon any other view, it is impossible to account for the transfer; for if the court decided to grant the motion, why was it not done?

and if it was refused, and the mover did not object, but acquiesced, why was the transfer made ? The case shows no fact upon which the other side could have any right to except. It does not seem to us that it could be either important or useful to state in terms what was the opinion of the court below. And it therefore seems to us that the cases were properly transferred, and that the superior court had authority to consider and decide the questions, and to direct the judgment to be entered.

It is suggested in the argument that the original question was decided before the parties had been fully heard, but the files of the judges show that briefs of their positions and arguments had been presented by Mr. Claggett, for himself, and by Mr. Emery, for Mr. Simes, and we think opportunity had been afforded to both to be heard orally; and we think we can safely say, after having heard two extended oral arguments, and received several written and printed briefs and arguments of great length, that nothing new has been presented, to which our attention was not sufficiently called by the briefs then before us.

We have again turned our attention to the case, as it was originally presented to us, and have compared with it the evidence which has been laid before us upon this second application, and after a careful examination, as the result, we take the facts to be as they are stated in the original case and as they are stated in the case reported in Foster's Reports. No change is made in our impressions of the material and important facts, by any of the additional matters in that large mass of testimony. Suggestions are made, imputing blame to the clerk, beyond what would result from inattention or misapprehension ; but, as we think, the evidence entirely fails to sustain them, and we have therefore entirely disregarded them. It may in this case admit of doubt if they are in any way material; because it would be the duty of the court to set aside the record of a judgment, if none had been rendered, or to correct it, if wrong, alike whether

the incorrect entries had been made by accident or design. Imputations are cast upon the conduct of Mr. Simes, in relation to other things connected with his mortgage than those which are here material, and as to which we have spent no time, and have formed no opinion. They are, at best, entirely irrelevant.

Upon the facts which appear in the case, the first question is, whether the judgment entered in the original action of *Simes* v. *Claggett*, was in fact entered by virtue and in accordance with an order of the court. It appears by all the testimony, that an order was made and entered upon the docket of the court, for "judgment by agreement;" and it cannot be questioned that such an order and entry were all the authority required by the clerk, to justify him in entering upon the extended records of the court the judgment now complained of, if no subsequent action had taken place in the court. As to this point, no one would affect to entertain a doubt. It appears, however, that before the final adjournment of the court, a motion was made that the case should be continued. The effect of an order to this effect, from its incompatibility with the order for judgment, would be to revoke that order for judgment, or at least to suspend its taking effect. Upon this motion, an order for a continuance was made by the court, but failed to attract the attention of the clerk, and was not entered upon the docket of the court, and it was in consequence of this omission, that the judgment complained of was entered. This judgment, then, though erroneous and incorrect, was not the mere unauthorized act of the clerk, entered without any authority of the court, but it was a judgment entered by mistake, under an express order of the court, though against another order not known to the clerk. It was, therefore, a defective judgment, liable to be set aside and avoided, and not in point of fact, any more than in law, as we have before seen, a nullity which could be disregarded by every body.

But this state of facts shows ample cause for setting aside

the judgment, upon a proper application for that purpose. The application for this purpose was, nevertheless, one addressed to the sound discretion of the court, to be determined upon the facts then presented to them, and with reference to the state of facts existing at the time of the application.

The distinction thus suggested is one of a very essential character. If the judgment was void, no state of facts subsequently arising would be of the least importance; the defect would be incurably fatal. But if it was merely invalid and voidable, it might be made effectual by the acts of the parties; and we think it very clear that the judgment before us was one of the latter class, and that its defects would be entirely remedied by a release of errors, so that no exception could be taken by any party to the proceeding. *State* v. *Richmond*, 6 Foster's Rep. 232.

In answer to the application of the petitioner, the counsel for Mr. Simes take two positions: 1st, that the judgment was rendered in accordance with the agreement of the parties, and that the order made for the continuance of the cause was founded on misapprehension on the part of the court, and upon incorrect statements of the facts made to them; and 2d, that Mr. Clagget has waived his right to set aside the judgment, by delay.

We have turned our attention to the first of these points, because the court, if satisfied their last order was founded on mistake, and that the judgment entered was in conformity to the substantial justice of the case and the agreement of the parties, would not disturb a judgment once entered to enforce such an order. They would not set aside a judgment which they must in justice at once renew if it were set aside.

The agreement of the parties was, that whenever the case came in order for trial, judgment should be ordered for the plaintiff, if certain deeds were cancelled. It is stated in the case, that the last action tried by the jury, at the February term, 1849, was No. 146, and the case of *Simes* v. *Claggett*

was No. 355. From this fact it is contended for the petitioner, that this case did not come in order for trial at that term, and consequently the time for entering up judgment according to the agreement had not arrived. The answer of the original plaintiff is, that there being no defence to the action, the case was in order for trial upon the first call of the docket, and that by the law and practice of the court, cases standing later upon the docket than the last case tried, cannot be further continued, unless there is a defence; and that the court do not dismiss the juries, in ordinary cases, until all such cases have been disposed of. Such is our understanding of the practice of the court, as it has been for thirty years and more. And we think that if the agreement of the parties had been seen by the court, they would have held that the case was in order for a trial at that term, and that so far as related to this stipulation, the judgment should be then entered.

Another stipulation was that certain deeds should be cancelled before the entry of judgment. There is no direct evidence that this stipulation was complied with. It does appear that before the actual entry of judgment was made, and the writ of possession issued, these deeds were cancelled and put on file with the clerk, but no date is connected with this transaction. A failure to comply with this condition, would have been a good reason for a continuance. There is no proof, and there can be no presumption, that the deeds were cancelled during the term; and in this respect the plaintiff fails to show the agreement fulfilled.

It pretty distinctly appears that the petitioner was not prejudiced by this failure, except as he has lost by the judgment the advantage of delay.

As to the waiver alleged, it appears that Mr. Claggett executed the lease shown in the case, in September, 1849. In this lease the fact of the rendition of the judgment in favor of Simes against him, the issuing of a writ of possession, and the fact that possession had been taken under the writ,

are distinctly recited and admitted.   At that time it appears
by the evidence that Mr. Claggett was in possession of in-
formation that the action had been ordered to be continued
by the court, having received a letter written by his counsel,
Mr. Wells, informing him of that fact.   Having had this
notice, he must be taken to have had such information as to
put him on inquiry, and he must be taken to have known all
that he would have learned by proper inquiry.   Being thus
aware of the facts, he is bound by his admissions in his
lease.   It might even be contended that he was estopped to
deny the truth of his deliberate admissions under seal.   For
many purposes he would undoubtedly be so, but in a case
of this kind, the court would not incline, upon any technical
rule, to exclude any evidence which might throw light upon
the real position of the case ; but it certainly cannot be re-
garded as less than a deliberate admission, and consequently
strong evidence of the facts recited, namely, that Simes, by
the consideration of the justices of the court of common
pleas, had recovered a judgment against him.   And it is
certainly with a very ill grace, that after such an admission,
the judgment thus admitted. is alleged to be a mere unau-
thorized entry of the clerk, and not to be a judgment of the
court.

The lease was dated September 3, 1849.   A term of the
court of common pleas was holden on the third Tuesday of
the same September.   It was the duty of Mr. Claggett, if
he conceived there was anything irregular or illegal in the
entry of the judgment against him, to make immediate ap-
plication to the court for relief.   The court in September
was holden in Portsmouth, the place of his residence, and
the same judges, counsel and officers of the court, except
the presiding justice, whose evidence is now laid before us,
to show the facts relative to the entry of judgment by agree-
ment, and the subsequent order for a continuance, were
probably all in attendance, so that the facts necessary to sup-
port any application which he might think proper to present,

were then within his reach ; and yet he did nothing, and so far as appears, he said nothing in relation to any supposed illegality of this judgment, at that term. It does not even appear that he made any inquiries upon the subject. It was not necessary he should be prepared to support his motion to set aside this judgment by evidence at that term, since, beyond question, reasonable time would have been allowed him for that purpose. Two terms of the court were held in the year 1850, but no application was made at either, upon this subject, and it was not until February, 1851, two years after the proceedings in court which gave rise to the application, that the matter was in any way brought to the notice of the court.

The authorities cited by the counsel for the plaintiff, Simes, *Harris* v. *Mallet,* 1 Taunt. 59 ; *Loyd* v. *Hawkyard,* 1 M. & K. 320 ; *Moore* v. *Stockwell,* 1 B. & C. 76 ; *Downes* v. *Withington,* 2 Taunt. 243 ; *Pearson* v. *Rawlings,* 1 East 77 ; *D'Argent* v. *Vivant,* 1 East 338 ; and *Blanchard* v. *Goss,* 2 N. H. Rep. 491, and the cases cited in them, are clear and decisive to the point, that any delay to apply to the court for relief in cases of irregularity, after the facts are fully known, beyond the earliest reasonable opportunity, is a waiver of the objection, equivalent in its effects to a release, and the court will not afterwards listen to any application.

' It is no answer to this principle to say, as is done in behalf of this petitioner, that the motion to the court was made at the first term after Mr. Simes offered to sell the mortgaged premises. That was a point of time in no way material. The waiver arises from a neglect to apply for relief at the earliest reasonable opportunity occurring after the facts are known, or the party has such notice that he ought to have known them.

This is not a mere technical rule, but is one founded in substantial justice, for time is an important matter to the party delayed in all legal proceedings. In the present case

this may be clearly seen. If the application had been made to the court at the September term, 1849, it may be presumed that the plaintiff would have ascertained how the facts were, and would have at once consented to have the judgment vacated, upon Mr. Claggett's surrendering his lease. As the case then stood, Mr. Simes would have been entitled to, and would have obtained, an effectual judgment, and would have been delayed a few weeks, at most, in obtaining possession, and a foreclosure of his mortgage. Neither would the delay or inconvenience to Mr. Simes have been materially greater, if the judgment had been set aside, against his will and opposition. It would have been at that time a clear case for setting aside the judgment. By omitting to make his application till February, 1851, if his application should succeed, Mr. Claggett secured to himself the occupancy of the property at a nominal rent for a year, and until the judgment was set aside, and still held in reserve the stipulation for another year's lease contained in the agreement for judgment. This stipulation, neither Mr. Simes nor the court could claim to have changed, if the judgment should be set aside upon the only ground now open, namely, that it is a mere nullity ; while at the September term, 1849, it might have been set aside as merely irregular, and upon such terms as might be deemed just.

If it could be supposed that the petitioner, acting deliberately upon the position which has been strenuously insisted upon by him, through all the stages of this case, that this judgment was the mere unauthorized act of the clerk, and as such absolutely void and a mere nullity, had yielded to the writ of possession, taken a lease and kept possession, keeping silence as to this fatal defect in the judgment, intending all the while to turn round upon Simes, set aside his judgment and execution, and compel him to obtain a new judgment, and to begin anew his foreclosure after the lapse of some years, it would strongly illustrate the wisdom of the common law rule, which requires an immediate ap-

plication to the court, and the mischiefs which would result from the want of such a rule. We have not assumed any such purpose to exist in this case.

There is, perhaps, another reason why the judgment should not be set aside, under the circumstances of this case, as presented to the court at the February term, 1851. The action was brought for the purpose of foreclosing a mortgage. The delay which the defendant had suffered to occur was such, that no effectual relief could be given to him by allowing his motion. The possession was taken under a writ of possession, issued upon this judgment, which continued in force until after the equity of redemption has expired by a year's peaceable possession under process of law, without redemption. If, in ordinary cases, the effect of such a foreclosure would be defeated by an avoidance of the judgment, the court cannot but see that the lease is conclusive evidence against Mr. Claggett of the existence of the judgment and of possession taken under process issued upon it. If he was estopped to deny these facts, it would be quite immaterial whether the judgment and execution were set aside or not.

It seems to us now, as it did to the court when the decision was made upon the motion, at the July term, 1851, that it could not be deemed a judicious exercise of the discretionary power of the court of common pleas to set aside a judgment after the delay, and under the circumstances disclosed in this case.

The usual course has been, in cases of this kind, to certify the opinion of the superior court to the court of common pleas, and the entry of judgment has been generally made by the order of that court; and it seems to be matter of complaint here, that the order was in direct terms, and not advisory. "It is adjudged by the court that the motion be dismissed." But we regard it as a matter wholly immaterial whether the order is made directly for the entry of judgment and the judgment entered upon the record by the clerk,

Claggett *v.* Simes.

or the opinion certified to the court, and judgment entered by their order, so far as the parties are concerned, since the result is the same in both cases; the statute evidently contemplating that such judgment shall be entered in the common pleas, or such disposition of the case made, as of course, as the superior court direct. It was, in our judgment, improper for the clerk to make an entry of judgment in such case without the direction of the court of common pleas, though in some cases that is evidently proper under the provisions of our statutes. This impropriety cannot, however, affect the validity of the judgment.

The petition now before us is but a renewal of the motion of February, 1851. The decision of the court in 5 Foster's Rep. 402, in this case, still approves itself to our judgment as correct. The superior court will not reëxamine a question addressed to the judicial discretion of the court of common pleas, which has been definitively decided by that court, still less, *a fortiori,* would they examine a similar question, which had been once decided by themselves upon a transfer from the court of common pleas. And we are induced to look again at these matters only in consequence of the seeming misunderstanding by the counsel, of the points originally decided, and of the absence of a report of that case.

The court of common pleas, upon the opinion of the superior court being presented to them upon the question transferred upon the present petition, dismissed the petition, agreeably to that opinion, without examination of the merits of the case. In our opinion, they acted with entire propriety, and in accordance with their duty, as prescribed by law; since we are entirely unable to assent to the idea of the petitioner, that the court of common pleas have any authority to interpose their own judgment, after having transferred the case to this court for decision. We regard it as an extraordinary instance of the patience of the court of common pleas, that they should listen to an application to re-

store to their docket a case which had once been dismissed, agreeably to an order of this court. And it is not creditable to them, or us, that a matter once adjudicated should be again brought under discussion, as it has been in this case.

It is, then, to be certified to the court of common pleas that, in the opinion of this court, the petition in this case be and is dismissed.